RING BINDER v. STAPLES et al. 2010-12-84 Applegate when you're ready. Good morning, your honors. May it please the court, I am David Applegate and I represent the plaintiff appellant in this case, US RING BINDER LLC. This is an appeal from an erroneous claim construction and resulting summary judgment of non-infringement from a district court in the Eastern District of Missouri. Let me make plain at the outset what we are not arguing here today and that is that the prosecution history is never an issue in construing claims or indeed that the prosecution history should not have been considered here. Second, we are not arguing as the response seems to suggest that this court should enter a summary judgment or direct a summary judgment of infringement, although we do believe that the record before the district court presents sufficient credible evidence of infringement both literally and by equivalence that ultimately a judgment of infringement would be the right result. Instead, the crux of our argument here today, your honor, is that the district court misconstrued in its three consecutive claim constructions, the term lever arm and release lever in a way to require that one end of the release lever, which is pictured here at page four of our brief, is one solid piece. The district court determined that the lever arm and of that release lever needed to be physically attached to the leaves of the binder mechanism, which with the court's permission and by agreement of counsel, I will hold up a sample of the leaves being the part underneath. They come into contact with the rings so that when pressure is applied to the lever arm, these leaves transmit the force from the finger plate to the rings to open and close them. Is that the commercial embodiment of your patent or is it the accused device? What I'm holding up, your honor, is labeled Diamondback, short to counsel, who has the same model is an embodiment of the patent. So the district court determined that the release lever needed to be physically attached to the leaves, but that the finger plate did not. And this is manifestly a misunderstanding of what the invention is, which anyone skilled in the art would understand as the worldwide defendants themselves admit. They say in their summer judgment reply to the district court at a 469, a fifth requirement for infringement is, quote, that the lever arm must be a rigid structure. They say in that same summary judgment reply brief to the district court at a 468, quote, any requirement placed on the release lever as a whole necessarily applies to release levers components, namely the lever arm and the finger plate. And they said the same thing at the 469, quote, the lever arm is part of the release lever. So those are material facts that are not in dispute and they are facts that the district court manifestly confused in its ruling on claims construction, which therefore materially prejudiced the summary judgment argument because that was the crux of the ruling on summary judgment. And that fact, that crucial misunderstanding on the part of the district court, we submit, your honors, is enough to overturn the district court's claim construction and concomitantly reverse the summary judgment of non-infringement. But because the court also looked to the prosecution history, let me turn to that as well. And here again, as I said, we do not argue, of course, that prosecution history is never relevant to claims construction. What a court does or should do in construing claims is look for the intent of the inventor. And as we all know, it looks first to the intrinsic evidence, including the claim language and the specification, and if evidence, the prosecution, if in evidence, the prosecution history. But in doing so, the court misconstrued two pieces of prosecution history, both cited to the examiner in the application on the face of the patent, Trussell and Burbaum. And in distinguishing those two pieces of prior art, what the applicant did was to say in both of those, there is either a vertical pin, as in Trussell, or a rivet, as in Burbaum, coupled with these trunnions that attach the lever mechanism to an underplate, an underplate that goes underneath these leaves of the invention. And in the patented invention, one does not need those vertical pins or rivets or trunnions. And what the district court did in this case... Well, the alleged disavowal or disclaimer in the prosecution history is a little broader than that, right? It doesn't refer to vertical pins. As I read it, and I'm reading now from A254.22, to the contrary, the lever arms of the present inventions attach to the leaves of the binder without requiring any additional mechanisms or fasteners to provide for the operation of the leaves. Therefore, eliminating the need for a pin is required in the Trussell binder, etc. That seems to me to be somewhat broader than just saying that the particular structures of Trussell were not at issue here. But I submit that just as a picture is worth a thousand words, Your Honors, what the examiner needed to do... Actually, the more pertinent quote is on the next page, which is, the lever of the present invention does not It seems to me pretty broad language. If one looks just to the words and not to the pictures, which are shown in the figures of both Trussell and Birnbaum, in figure four at A51 in Trussell, one will see item eight. It's a vertical pin. And in figure seven, one will see the underplate to which it attaches. If one looks to Birnbaum at A54 in figure five, the most prominent feature, labeled 14, is the vertical rivet. So, looking again to the intent of the applicant, the intent of the inventor, what is this invention about? It's about a low-profile ring binder. And one way to accomplish that low profile with its 10 advantages of less throw weight and so on, is to reduce, obviously, that profile by the lack of a vertical pin. And the fact that the words did not call out specifically vertical, the prior art that was called out and distinguished over did have either a vertical pin or a vertical rivet, which neither... Or trunnions. Or trunnions. Right, but trunnions are pretty close to a horizontal pin, aren't they? The way a trunnion's work would be, I would think, almost indistinguishable from a pin. Well, yes, the manner in which a trunnion works is very similar to a horizontal pin. Right, and you've disclaimed trunnions. But the prior art that was disclaimed, in connection with which the trunnions were disclaimed, featured a horizontal device as well as the vertical rivet. And I submit, on behalf of U.S. Ring, that that is an important distinction. If the court looks to the other cases cited by the parties in which prosecution history estoppel was or was not asserted to bar infringement, one will find, I think, that Omega Engineering, Voda versus Portis, are much more akin to this case than the only case cited by either party in which estoppel was actually found, where there were actually amended claims rather than just distinguishing over the prior art. Let me turn then briefly to the infringement part of the case. Again, we submit that there was ample record evidence supported by the declaration of Paul Whaley that would show to a jury drawing inferences. If we affirm the claim construction, doesn't that settle the infringement question? Yes, it does, your honor. Are you going to discuss further the attachment aspect of the case? You alluded to it earlier, but I didn't know if you were going to talk further about the disclaimer question with respect to attachment. If the court has questions about that, I'm— Well, I actually—the language that I read earlier really pertained more to attachment, I guess, than to the pin issue, at least the first quote. So if you could address why that doesn't disclaim non-attached. And by attached, I'm saying something other than simply touching or engaging. Well, because there again, the district court had this confusion between the lever arm, which is a part of the release lever, and the release lever itself. Well, let's assume that—I guess I would say, well, so what? I mean, just talk about whether the prosecution history has disclaimed any circumstances in which the lever is not attached to the leaves. And by attached, using the term to mean physically attached, not simply touching or pushing on, but otherwise not attached. The court is asking if it's disclaimed cases of attachment as opposed to contacting? Right. No, I don't believe so, Your Honor. I think that as the court indicated, the district court indicated, the language of the claims, engagement with or in contact with, is much broader than attachment and does not require physical attachment. But in your prosecution history, you say the lever arms of the present inventions attached to the leaves of the binder. Why doesn't that constitute a disclaimer of non-attaching structure? Because that was, however artfully possibly phrased, that was not the point of distinction over the prior art. The point of distinction was these trunnions, these pins, these rivets. And so, whether the prosecuting attorney said comes into contact with or attaches is, in our view, irrelevant because that was not the distinguishing factor on which the examiner relied. You're well into your rebuttal time. Would you like to say what I used? I will reserve the balance for rebuttal. Thank you. Mr. Rabenberg, is it? Yes, Your Honor, yes. May it please the court, I'm Keith Rabenberg. I'm here on behalf of the Appalese. My co-counsel, Richard Brophy, is also here. This is, I believe, a fairly simple, straightforward textbook case of prosecution disclaimer. And the facts can be described really quite simply. Um, the accused device, the device that's been caused, called the EasyTouch, and by the way, as Mr. Applegate said, we stipulated to showing these devices if it's held. The EasyTouch device is the one with the red trigger on it. And what is not in dispute is that this device uses a pin to hold this trigger in place and to operate the device. And also what's not in dispute is that this device has only ever been made with just one trigger, not one on each end as this one has. That's one part of the facts. The other part of the facts is that's important is that in, to get this patent, the Apple, the patentee, disclaimed certain subject matter, including devices that have a pin like this. And that's why the judge granted summary judgment to us. In the commercial embodiment of the patent, is the lever attached to the leaves? Yes. Yes, Your Honor. And what's the attachment structure? The way it works, Your Honor, and if you're interested, I can hand this to you, but I can kind of show it from here. The device has, I think it was kind of like a T on the end, and it interlocks in between the two, what is called leaves on the bottom. Right. There's a little gap or a little notch in each side of the leaves, so it's in there and kind of interlocks. So you can see it can't fall off because those things hold it in place. Is that what's shown at page 14 of your brief? There's a photograph. Yes, Your Honor. That's exactly right. And in the accused device, there's engagement upon depressing the red button, but not attachment in your view? Right. It's attached by this pin, but it's not attached to the leaves. And you can see from here, one part of, it's like two fingers that project out, one on the bottom side of the leaves and one on the top. And the top finger pushes it back in and the bottom finger pushes it open. That's correct, Your Honor. And that's pictured in the brief as well, a couple places. So yes, indeed, if it didn't have the pin, the release lever would just fall off of this device. That's, I guess, at the bottom of page 15, this picture is your device? Is that the right one? Yes. And there's the horizontal pin and the arcing device above and the straight device below, the straight one below. Yeah, it's like two fingers, one appears to be bent. So simplistically, that's what happened. This device has a pin. It's necessary to its attachment and its operation, but pins and other similar mechanisms were disclaimed. The one thing to keep in mind and make sure, I think this was a little muddled in Appellant's argument, the application was for what we call a low-profile ring metal. And that's just simplistically the lever sticks out horizontally instead of upward. And the fact is, is that it's not the first low-profile ring metal that somebody applied for a patent on. In fact, the Trussell and Birbaum references were low-profile ring metals, one over 100 years old. So there's been several of them in the art. And when the examiner cited that against the application, the focus of the prosecution turned toward the way that that low-profile release lever is attached to and operates in the device. And as we explained in our brief, basically, it's either attached to the leaves or it's attached in some other sort of way. And so the patentee said what you quoted, Your Honor, the lever arms is a present invention attached to the leaves of the binder without requiring any additional mechanisms or fasteners. And it goes on to mention pins and trunnions as examples of fasteners that are disclaimed. It's also important to say that that sentence that I started to quote from continues with and also eliminating additional manufacturing and labor costs assembling such a binder as taught by the Trussell patent. The point of that, Your Honor, is this is an embodiment of what's disclosed in the patent. And the release lever, which includes the lever arm, is attached to the leaves. There's no additional mechanisms that are necessary. And it's not surprising that one could conclude that that's going to be cheaper to manufacture than something like this where you have to add a pin and so forth. Mr. Redenberg, this is an unusual disclaimer type case in one respect, in that I'm not sure I've seen one exactly like this before in this regard, in that this is a comprising claim in which we're trying to ask the question of whether there is a disclaimer of structure. And if you have a comprising claim, normally, if you have extra structure or not, it's irrelevant. So how do you square a disclaimer of structure and a comprising claim? You understand my question? I think I do, Your Honor. The—I think you have to go back to what the law of the circuit is, that when there is a clear and unambiguous disclaimer that occurs during prosecution, that becomes part of the patent, so to speak. So it's as if this patent read, comprising the following, but not including dot, dot, dot, attachment or pins, horizontal, vertical, or trunnions, or what was the other? Any other fasteners. Any other fasteners, right. It's as if that were appended to the bottom of the claim, even though the rest of the claim is in comprising format? Well, I think in a way you could say it that way, but I believe there's case law, and I don't have a site for you, where I think the court has said that a prosecution disclaimer such as this is not meant to add additional limitations to the claim, but it describes what the scope of the invention is. And so because it becomes a claim construction issue, it's wrapped into the claim construction process as it did here, and then— But it's not the normal situation in which we're using the disclaimer to define a term, for example, in the claim. It's a case in which we're, as you say, setting aside the claim, claim construction, and then doing another operation, which is to decide if there's been a disclaimer of claim scope, quite independent of any words or other meaning that the claim may carry, right? I think that's right, and we went down the procedural path that the cases seem to go, that you look at that disclaimer, you do your best to attach it to, so to speak, a claim term in the claim, and then define that accordingly. But that doesn't really work here, right? You can't really find a claim term to say that disclaimer narrows the claim by definition of a particular term. Well, if you said, I mean, as it's been defined, it's a lever arm has been defined as one that is attached to the leaves of the binder. Doesn't it also say into engagement with said leaves? That's another limitation in the claim. In one of the claims, it's into engagement with, and I can't remember if it's claim one or claim seven, but the other of the two is connecting. That implies directly without the intervention of a pin or something else. Well, I'm not sure if I understand what you're saying. One of the claims, it says they're connecting, and one of the claims, it says into engagement with, and I think the way the definition has worked out, the lever arm is, it's connected, so it's kind of a subset of engagement with. I'm not sure if I'm answering your question, and I'm not sure if I responded to yours. It's just, it's an awkward and somewhat unusual posture for a disavowal, but I suppose the rules of disavowal still apply no matter what the form of the claim. Well, I think it has to because the public notice function that the prosecution history serves, when a patentee comes in and says my invention does not include lever arms or engagement functions of certain types, the public is allowed to rely on that. What you're saying is the applicant could come in and say my invention doesn't apply to, doesn't include devices with red buttons, red finger levers, and in which case you'd have a walk with your red finger button, right? I think the law is pretty clear on that. If they say that, that's what it is. Even if there's no way to tie that disavowal to particular language in the claim. Well, I think that's the way, yeah, I agree with that, Your Honor. And the reason why it was tied to particular language is that when you look at all the cases in this area, that seems to be the construct of the way, of how it proceeds. I mean, there may be, it may be as the magistrate judge said in this case, that there is a way to tie it, but my question is even if there isn't, then you say that the scope of the disavowal doctrine is the same? I believe it has to be, Your Honor. I don't know how else we could get around it. And because it becomes a claim construction issue, I think that's why it ends up discussed in the context that it was. The district judge, I think, or the magistrate judge relied on the language that said the lever arms of the present invention, et cetera, et cetera. So to him, it made sense to construe the term lever arms with, to incorporate the limitations, so to speak. So it's, that's pretty much what our case is. I did hear a little bit in Mr. Applegate's opening, something to the effect that I think one of their arguments has been that the scope of the disclaimer should not be so broad as to include things beyond the particular pin or trunnions that are shown in the Burbaum and Trestle references. But of course, this court's case law has said that that's not allowed. You disclaim what you say, and if it was more than you need to do that, you'd still disclaim all that. And I think that's controlling here in response to that position. Um, I'm near, well, I actually have three minutes left, but that's pretty much all of our, it's a very simple case. We have an alternative grounds for dismissal that I'd be happy to submit on the briefs unless the court has any questions about either issue. I think not, Mr. Ravenbury. Mr. Applegate has close to three minutes remaining, or close to two minutes. Thank you, Your Honor. In my close to two minutes, I'd like to address two brief points. The first was the Appele's comparison of the a commercial embodiment of the patented invention with the accused infringing device. And as the court knows, that's not the test. Is the claim language properly construed against the infringing device? That is the determination of infringement either literally or by equivalence. And so that leads me to the second issue, uh, which, about which Judge Bryson has had a number of questions, and, and that's the attachment issue. Um, Appele's counsel said he wasn't sure of the language in, in one of the other claims, but he thought it was connecting. And in fact, the language of independent claim one is engagement with, um, and obviously the claims that depend from that. The language in claim seven is not connected, as Appele has represented, but is contacting. And the only attachment, when one looks to the, the prosecution history, about which, uh, Judge Bryson questioned me in the opening argument, the only attachment that's distinguished, uh, by the prosecuting attorney, uh, at A39 and A40 is attachment in Trussell and attachment in, uh, Burbaum. So he's saying, unlike those, we don't require attachment. And as the district, in this case, did properly recognize, all that is, uh, the terms engagement and connecting are so unambiguous that they do not even require construction. Well, but, but would you address, uh, if, if you would, the specific language used again in the prosecution history, uh, the lever arms of the present invention attached to the leaves of the binder without requiring any additional mechanism or, or, uh, or fasteners? Well, a, a, again, um, you look to the claims, you look to the specification, nothing in there requires attachment versus engaging versus contacting. My, uh, argument, which I emphasize again, is that the prosecuting attorney was speaking broadly. The point was not whether they attach, but whether whatever you want to call this contact, engagement, attachment, uh, is not by virtue of the vertical pin, the rivet, or trunnions as in, um, Trussell or in Burbaum. And that gives up, as Apley rightly points out, um, equivalence of that. But I submit, um, as, as my final comment, unless the court has further questions, that a horizontal pin is, is not the equivalent of the vertical pin or rivet or trunnion. Thank you, Mr. Applegate. We'll take the case under advisement. Thank you.